1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RUDY J. ORNELAS,                          No.  2:12-cv-03097 TLN DAD

12                    Petitioner,

13          vs.

14   W. KNIPP,                                  FINDINGS & RECOMMENDATIONS

15                    Respondent.

16

17          Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction entered against him

19   on July 16, 2010 in the Yolo County Superior Court on charges of attempted murder, in violation

20   of California Penal Code §§ 187(a) and 664(a)[1], possession of a firearm by a felon (§ 289(a)(1)),

21   and assault with a semiautomatic firearm, (§ 245(b)).  (2 Clerk's Transcript ("CT") 373-74.)  At

22   that time the enhancement allegations that petitioner unlawfully discharged a firearm (§

23   12022.53(c)), unlawfully used a firearm (§ 12022.5(b)), had suffered a prior "strike" conviction

24   (§§ 667(a)(1)), and had served four prior prison terms (§ 667.5(b)) were found to be true.  (Id.)

25   Petitioner seeks federal habeas relief on the following grounds:  (1) his trial counsel provided

26   ineffective assistance by failing to move for a mistrial; (2) the trial court erred by failing to *sua*

27

28   [1]  Further references are to the California Penal Code unless otherwise specified.

1

*sponte* instruct the jury on the lesser included offense of attempted voluntary manslaughter; and (3) the trial court erred by failing to *sua sponte* instruct the jury to view petitioner's out of court statements with caution.  (Docket ("Dkt.") No. 1 at 2-3.)  Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

## I.  BACKGROUND

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal[2], the California Court of Appeal for the Third Appellate District provided the following summary of the evidence presented at petitioner's trial:

> In February 2007, Melinda McKinnon was dating and living with Claudio Magobet.[3]  One day, McKinnon left Magobet's house and took his wallet with her.  That night she met up with victim Abel Trevino, with whom she had had a prior sexual relationship, and they ended up having sex at a local motel.
>
> The next day, defendant telephoned Magobet and told him that he had seen McKinnon with Trevino the previous night and that McKinnon had Magobet's wallet.  Defendant also said that his own keys were missing; he believed Trevino might have them.  Defendant and Magobet agreed to meet up and look for McKinnon and Trevino.  Magobet took his loaded nine-millimeter handgun with him.
>
> Defendant and Magobet spent the day driving around West Sacramento, drinking beer, and checking multiple locations for Trevino or McKinnon.  At one point, defendant asked Magobet if he could hold Magobet's gun because "he would know how to handle the situation."
>
> Defendant and Magobet found Trevino at a trailer owned by Ray Mata.  Defendant and Magobet yelled and threatened Trevino as they approached the trailer.  Mata allowed the duo to enter because Magobet assured Mata that there would be no problems.
>
> Defendant and Magobet asked Trevino about the location of Magobet's wallet and defendant's keys.  Trevino denied knowing anything about them.  Defendant then asked Trevino to step outside to continue the conversation.   Trevino resisted but eventually followed defendant out the front door.

---

[2]  Notice of Lodged Documents ("LD") 4, (hereinafter "Opinion").

[3]  Magobet was a codefendant at trial.  In 2009, he pleaded no contest to assault with a firearm. He is not a party to this appeal.

As soon as they got outside, Trevino used his left hand to strike defendant on the back of the head.  Defendant "bobbl[ed] around" and hit a truck.  Before Trevino could strike him again, defendant regained his composure and reached in his pants for the gun.  Trevino pushed defendant and tried to run away.

Defendant fired the gun at Trevino from close range but missed.  Trevino took cover behind the truck.  Defendant then fired a second shot at Trevino, missing again.  Still hiding behind the truck, Trevino pleaded for defendant to stop shooting.  Defendant fired a third shot at Trevino, missing again.  Finally, Trevino ran from the truck and tried to jump a wooden fence.  Defendant fired a fourth shot at Trevino, which also missed.

Defendant's wife, Angelina Ornelas (Angelina), testified that a few months after the shooting Magobet gave her a key to his Lexus: "He said, I'm giving you this key to my '99 Lexus.  He said, tell [defendant] to stay quiet, and I'll get him out of this mess because all of this mess is mine."  Magobet also told Angelina that he had fired the gun at Trevino.

Angelina further testified about a conversation she had with Trevino after the shooting.  "He said he was sorry for [defendant] being in custody and that he was going to clean his [sic] self up from drugs and go straighten it up and fix it, but I don't know if he ever did."

Cathy Perez, a neighborhood friend, testified that on the night of the shooting, Magobet came to her house, sweaty, out of breath, and frantic, and asked if he could spend the night.  Magobet had a small gun in his hand and told Perez that he "just shot at Abel."  Perez did not let him stay.

Sonya Mariscal, a criminal investigator working for the defense, testified that she interviewed Mata's neighbor, John Gilman.  Gilman told Mariscal that he had heard a gunshot and had seen Trevino run out of Mata's trailer followed by an unknown "Hispanic male."  Gilman told Mariscal that he knew defendant and did not see him at the trailer that night.

(Opinion at 3-5.)

Following the California Court of Appeal's affirmance of his judgment of conviction, a petition for review was filed on petitioner's behalf with the California Supreme Court.  (LD 5.) That petition for review presented the same issues that were presented on appeal and it was summarily denied on April 25, 2012.  (LD 6.)  Petitioner did not collaterally attack his judgment of conviction by filing a habeas petition in state court.  Petitioner filed his application for federal habeas relief with this court on December 26, 2012.

## II. ANALYSIS

3

1    A.   Standards of Review Applicable to Habeas Corpus Claims

2              An application for a writ of habeas corpus by a person in custody under a judgment of a

3    state court can be granted only for violations of the Constitution or laws of the United States.  28

4    U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

5    application of state law.  See Wilson v. Corcoran, 562 U.S. ___, ___, 131 S. Ct. 13, 16 (2010);

6    Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir.

7    2000).

8              Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

9    corpus relief:

10                      An application for a writ of habeas corpus on behalf of a
            person in custody pursuant to the judgment of a State court shall not
11            be granted with respect to any claim that was adjudicated on the
            merits in State court proceedings unless the adjudication of the
12            claim -

13                      (1) resulted in a decision that was contrary to, or involved
            an unreasonable application of, clearly established Federal law, as
14            determined by the Supreme Court of the United States; or

15                      (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
16            State court proceeding.

17            For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

18    holdings of the United States Supreme Court at the time of the last reasoned state court decision.

19    Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher ___ U.S.

20    ___, 132 S. Ct. 38 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams

21    v. Taylor, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in

22    determining what law is clearly established and whether a state court applied that law

23    unreasonably."  Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir.

24    2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of

25    Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not

26    announced."  Marshall v. Rodgers, ___ U.S. ___, ___, 133 S. Ct. 1446, 1450 (2013) (citing

27    Parker v. Matthews, ___ U.S. ___, ___, 132 S. Ct. 2148, 2155 (2012)).  Nor may circuit precedent

28    be used to "determine whether a particular rule of law is so widely accepted among the Federal

4

1    Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct.  Id.

2          A state court decision is "contrary to" clearly established federal law if it applies a rule

3    contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

4    precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003).

5    Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

6    writ if the state court identifies the correct governing legal principle from the Supreme Court's

7    decisions, but unreasonably applies that principle to the facts of the prisoner's case[4].  Lockyer v.

8    Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002

9    (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that

10   court concludes in its independent judgment that the relevant state-court decision applied clearly

11   established federal law erroneously or incorrectly.  Rather, that application must also be

12   unreasonable."  Williams, 529 U.S. at 412.  See also Schriro v. Landrigan, 550 U.S. 465, 473

13   (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

14   review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

15   "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

16   'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v.

17   Richter, 562 U.S. ___, ___, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541

18   U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal

19   court, a state prisoner must show that the state court's ruling on the claim being presented in

20   federal court was so lacking in justification that there was an error well understood and

21   comprehended in existing law beyond any possibility for fairminded disagreement."  Richter, 131

22   S. Ct. at 786-87.

23          If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

24   court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford,

25   527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

26   ─────────────────
     [4]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
27   overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
     presented in the state court proceeding."  Stanley 633 F.3d at 859 (quoting Davis v. Woodford,
28   384 F.3d 628, 638 (9th Cir. 2004)).

1   (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)

2   (1) error and that, if there is such error, we must decide the habeas petition by considering de

3   novo the constitutional issues raised.").

4           The court looks to the last reasoned state court decision as the basis for the state court

5   judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

6   If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

7   previous state court decision, this court may consider both decisions to ascertain the reasoning of

8   the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

9   federal claim has been presented to a state court and the state court has denied relief, it may be

10  presumed that the state court adjudicated the claim on the merits in the absence of any indication

11  or state-law procedural principles to the contrary."  Richter, 131 S. Ct. at 784-85.  This

12  presumption may be overcome by a showing "there is reason to think some other explanation for

13  the state court's decision is more likely."  Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797,

14  803 (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims

15  but does not expressly address a federal claim, a federal habeas court must presume, subject to

16  rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, ___ U.S. ___,

17  ___, 133 S. Ct. 1088, 1091 (2013).

18          Where the state court reaches a decision on the merits but provides no reasoning to

19  support its conclusion, a federal habeas court independently reviews the record to determine

20  whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v.

21  Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

22  review of the constitutional issue, but rather, the only method by which we can determine whether

23  a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no

24  reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

25  reasonable basis for the state court to deny relief."  Richter, 131 S. Ct. at 784.

26          A summary denial is presumed to be a denial on the merits of petitioner's claims.  Stancle

27  v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal court cannot analyze what

28  the state court actually did when it issued a summary denial, it must review the state court record

6

1  to determine whether there was any "reasonable basis for the state court to deny relief."  Richter,

2  131 S. Ct. at 784.  This court "must determine what arguments or theories . . . could have

3  supported, the state court's decision; and then it must ask whether it is possible fairminded jurists

4  could disagree that those arguments or theories are inconsistent with the holding in a prior

5  decision of [the Supreme] Court."  Id. at 786.  The petitioner bears "the burden to demonstrate

6  that 'there was no reasonable basis for the state court to deny relief.'"  Walker v. Martel, 709 F.3d

7  925, 939 (9th Cir. 2013) (quoting Richter, 131 S. Ct. at 784).

8         When it is clear, however, that a state court has not reached the merits of a petitioner's

9  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

10  habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462

11  F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

12  B.      Petitioner's Claims

13         1.  Ineffective Assistance of Counsel

14         Petitioner first claims that his trial counsel provided ineffective assistance by failing to

15  move for a mistrial after a trial witness testified that petitioner "used to beat up his wife."  (Dkt.

16  No. 1 (hereinafter "Pet.") at 16-18).[5]  The background with respect to this claim was described by

17  the California Court of Appeal as follows:

18         Defendant contends his trial counsel rendered ineffective assistance
          when, after Trevino unexpectedly testified that defendant had
19         beaten Angelina, counsel timely objected and moved to strike the
          testimony but did not move for a mistrial.  We disagree.
20
21                                      ***

22         This exchange occurred during the prosecutor's direct examination
          of Trevino:
23
              "Q.  [PROSECUTOR]:  All right.  And had you spoken
24         with [defendant] that day?

25              "A.  [TREVINO]:  You know what?  Prior to that day, I
          seen [defendant] at another house or whatever, at the trailer.  As a
26         matter of fact, he pulled up with somebody else.  He didn't know I
          was there that day, you know.  We had already had a conversation

27  ─────────────────────
    [5]  Page number citations such as this one are to the page numbers reflected on the court's
28  CM/ECF system and not to page numbers assigned by the parties.

here and there.  He said he wanted to knock me out.  He's been looking for me.  We went outside, you know.  I went outside basically to get knocked out and he changed the subject to – once again, he says, you know what? I would never fight you, Abel.  I'd just pop you.  You know what I mean?  I'd shoot you. [¶]  I tell him, hey, you know what?  It's good.  You know what I mean? Because we both know, you know what I'm saying, that *you're a sissy.  You know what I mean?  The only person he's ever beat up is his wife.* [¶]  Anyways –

"[DEFENSE COUNSEL]: Objection, ask that it be stricken.

"THE COURT:  Sustained

"[TREVINO]:  Anyways –

"THE COURT: Why don't you ask another question."
(Italics added).

(Opinion at 6-7)

Before this federal habeas court, petitioner acknowledges that his trial counsel promptly objected and moved to strike the objectionable testimony of Trevino.  (Pet. at 16.)  The trial court sustained that objection, granted the request to strike the objectionable testimony, and directed the prosecutor to ask another question, which she did.  (1 Reporter's Transcript ("RT") at 254.) Nevertheless, petitioner argues that due to the severe nature of the prejudice flowing from this testimony defense counsel provided ineffective assistance by merely lodging an objection to Trevino's testimony rather than moving for a mistrial.  (Pet. at 16.)  Specifically, petitioner contends that the striking of the testimony referring to him beating his wife following his counsel's successful objection thereto was an insufficient remedy because the jury may still have found him guilty of attempted murder by inferring that he had a violent nature based on the stricken testimony.  (Id. at 17.)  Petitioner argues that, even if his counsel chose not to move for a mistrial immediately in order to avoid unduly highlighting in front of the jury the witness's improper testimony, "there was no conceivable reason not to raise the motion once the jury was excused."  (Id. at 18.)  In sum, petitioner asserts that his trial counsel's failure to move for a

/////

mistrial allowed "the jury to take the image of petitioner beating his wife into the deliberation

8

1    room with it." (Id.)

2          The California Court of Appeal noted that the record did not affirmatively disclose

3    defense counsel's rationale for not moving for a mistrial following Trevino's reference to

4    petitioner beating his wife during his testimony. (Opinion at 8.) Nonetheless, that court rejected

5    petitioner's contention that there was no valid reason existed for his trial counsel's decision. (Id.)

6    In this regard, the California Court of Appeal stated as follows:

> Defendant argues "there could be no conceivable reason for defense counsel not to request a mistrial . . . once the jury was excused." However, a conceivable reason readily appears. The defense theory was "that Claudio Magobet is guilty of this crime." Trevino's lay opinion that defendant was "a sissy," who would never follow through on his voiced threat to "pop" or "shoot" Trevino, supported the defense theory that Trevino had been shot by someone else.

> By objecting and moving to strike, but not asking for a mistrial, defense counsel evidently sought to retain the favorable portion of Trevino's testimony while discarding the unfavorable. Trial counsel rationally could believe that, even if a juror were unable to put aside Trevino's stricken testimony about defendant beating up Angelina, the juror would have no reason to separate it from Trevino's opinion – voiced in the same breadth and not expressly stricken from the record – that *defendant was too much of "a sissy" to shoot Trevino*. As noted, this opinion directly supported the defense theory. Because there could be a satisfactory explanation for trial counsel's failure to move for a mistrial, the claim of ineffective assistance is more appropriately decided in a habeas corpus proceeding. (*Mendoza Tello, supra*, 15 Cal. 4th at pp. 266-267.)

19   (Id.) (emphasis in original).[6]

20         A petitioner seeking relief due to ineffective assistance of counsel must show that his

21   attorney's performance was deficient and that the deficient performance prejudiced the defense.

22   Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficient performance requires a showing

23

---

24   [6]  Under California law, where "'the record on appeal sheds no light on why counsel acted or
25   failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and
     failed to provide one, or unless there simply could be no satisfactory explanation, the claim on
26   appeal must be rejected.'" People v. Mendoza Tello, 15 Cal. 4th 264, 266 (1997) (quoting People
     v. Wilson, 3 Cal. 4th 926, 936 (1992)). Instead, claims of ineffective assistance of counsel in
27   such cases are properly raised by appellate counsel in a joined petition for writ of habeas corpus.
     Mendoza Tello, 15 Cal. 4th at 266-67. As noted above, in this case no state habeas petition was
28   filed by petitioner.

1    that trial counsel's representation fell below an objective standard of reasonableness as measured

2    by prevailing professional norms.  Wiggins v. Smith, 539 U.S. 510, 521 (2003).  To establish

3    prejudice, petitioner must show a reasonable probability that "but for counsel's unprofessional

4    errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.

5    Furthermore, the Supreme Court has held that where habeas relief is sought based on the

6    ineffective assistance of counsel in connection with proceedings in a state court, the petitioner

7    must show that the state court's application of the Strickland standard was unreasonable.

8    Harrington, 131 S. Ct. at 785.

9         Here, petitioner has failed to show that the California Court of Appeal's decision rejecting

10   his ineffective assistance of counsel argument as presenting a ground for reversal of his

11   conviction was contrary to, or an unreasonable application of clearly established federal law.  As

12   noted, petitioner's trial counsel lodged a timely objection when the prosecutor's examination of

13   its witness yielded an inappropriate response, and immediately moved to strike the objected to

14   testimony.  (1 RT at 254).  The state appellate court found from the circumstances that trial

15   counsel had a legitimate basis upon which to make a strategic decision to preserve Trevino's

16   testimony that supported the defense's theory that petitioner was not the shooter, while at the

17   same time striking his prejudicial comment.  (Opinion at 8.)

18        The state appellate court's decision not to second guess trial counsel's apparent tactical

19   decision was not an unreasonable application of the standard set forth in Strickland.  See

20   Mancuso v. Olivarez, 292 F.3d 939, 954 (9th Cir. 2002) ("We will not second-guess such

21   decisions or use hindsight to reconstruct the circumstances of counsel's challenged conduct.");

22   Guam v. Santos, 741 F.2d 1167, 1169 (9th Cir. 1983) ("A tactical decision by counsel with which

23   the defendant disagrees cannot form the basis of a claim of ineffective assistance of counsel.");

24   Carpenter v. Kernan, No. C 06–7408 JSW (PR), 2009 WL 3681684, at *16 (N.D. Cal. Nov.2,

25   2009) ("Tactical decisions of trial counsel deserve deference when:  (1) counsel in fact bases trial

26   conduct on strategic considerations; (2) counsel makes an informed decision based upon

27   investigation; and (3) the decision appears reasonable under the circumstances.")

28        The decision by petitioner's trial counsel to proceed after having the objected to testimony

1    stricken, rather than moving for a mistrial, was entirely reasonable under the circumstances.

2    Petitioner has come forward with no evidence to the contrary.  Accordingly, the state court's

3    decision rejecting petitioner's argument that the record reflected he received ineffective assistance

4    from his trial counsel was not "contrary to" or an "unreasonable application" of clearly

5    established federal law.  See 28 U.S.C. § 2254(d)(1).

6            2.  Instructional Error - Lesser Included Offense

7            Petitioner next claims that the trial court violated his right to due process by failing to *sua*

8    *sponte* instruct his jury on the lesser included offense of attempted voluntary manslaughter.  (Pet.

9    at 19-23.)  Petitioner contends that he was entitled to a jury instruction on any recognized defense

10   for which there was sufficient evidence from which a reasonable jury could find in his favor.  (Id.

11   at 19).  Here, petitioner asserts that there was substantial evidence introduced at his trial to

12   support an attempted voluntary manslaughter instruction based on theories of heat of passion and

13   imperfect self-defense.  (Id.)  The court concludes that petitioner's argument in this regard fails to

14   raise a cognizable claim for purposes of federal habeas review.

15           Although the United States Supreme Court has held that the failure to instruct on a lesser

16   included offense in a capital case is error of constitutional magnitude if there was evidence to

17   support such an instruction, Beck v. Alabama, 447 U.S. 625, 638 (1980), it has not decided

18   whether this rationale also extends to non-capital cases.  See Turner v. Marshall, 63 F.3d 807, 818

19   (9th Cir. 1995), overruled on other grounds by Tolbert v. Page, 182 F.3d 677 (9th Cir. 1999).  The

20   Ninth Circuit, like several other federal circuits, has declined to extend the holding in Beck so as

21   to find constitutional error arising from the failure to instruct on a lesser included offense in a

22   non-capital case.  See Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000).  Because petitioner's

23   was not a capital case, the state trial court's failure to give a lesser included offense instruction

24   did not rise to the level of constitutional error for which federal habeas relief is available.  See

25   Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir. 1998) ("[T]he failure of a state trial court to

26   instruct on lesser included offenses in a non-capital case does not present a federal constitutional

27   question."); James v. Reese, 546 F.2d 325, 327 (9th Cir. 1976) ("Failure of a state court to

28   instruct on a lesser offense fails to present a federal constitutional question and will not be

                                              11

1    considered in a federal habeas corpus proceeding.")[7]

2        Accordingly, petitioner is not entitled to federal habeas relief with respect to his claim that

3 the trial court erred by failing to *sua sponte* instruct the jury on the lesser included offense of

4 attempted voluntary manslaughter.

5        3. <u>Instructional Error - CALCRIM No. 358</u>

6        Petitioner also claims that the trial court violated his right to due process by failing to

7 instruct the jury at his trial to view testimony regarding his out of court statements with caution,

8 in accordance with CALCRIM No. 358.[8]  (Pet. at 23-26.)  Petitioner contends that the trial court

9 had a duty to give this instruction *sua sponte* because the out of court statements were introduced

10 into evidence by the prosecution through the testimony of his co-defendant, Claudio Magobet; the

11 victim, Abel Trevino; and the victim's girlfriend, Tiffany Martinez.  (<u>Id.</u> at 24.)  Petitioner argues

12 that testimony regarding his out of court statements was relied upon by the prosecution to prove

13 that he had a motive for the shooting, therefore requiring an instruction under CALCRIM No.

14 358.  (<u>Id.</u> at 24-25.)  Thus, according to petitioner, the trial court erred by failing to *sua sponte*

15 instruct the jury with CALCRIM No. 358 and the error was not harmless.  (<u>Id.</u> at 25.)

16        In general, a challenge to jury instructions does not state a federal constitutional claim.

17 <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982);

18 <u>Gutierrez v. Griggs</u>, 695 F.2d 1195, 1197 (9th Cir. 1983).  In order to warrant federal habeas

19

20    [7]  Moreover, to find a constitutional right to a lesser-included offense instruction in this case
would require the application of a new rule of law in the context of a habeas petition, something
21 the court cannot do under the holding in <u>Teague v. Lane</u>, 489 U.S. 28 (1989).  <u>See Solis v. Garcia</u>,
22 219 F.3d 922, 929 (9th Cir. 2000) (habeas relief for failure to instruct on lesser included offense
in non-capital case barred by <u>Teague</u> because it would require the application of a new
23 constitutional rule).

24    [8]  The jury instruction petitioner now argues should have been given at his trial provides as
follows:  "You have heard evidence that the defendant made oral or written statements before the
25 trial.  You must decide whether the defendant made any of these statements, in whole or in part.
If you decide that the defendant made such statements, consider the statements, along with all the
26 other evidence, in reaching your verdict.  It is up to you to decide how much importance to give
to the statements.  [¶]  Consider with caution any statement made by the defendant tending to
27 show his guilt unless the statement was written or otherwise recorded."  CALCRIM No. 358 (new
Jan. 2006) (Dec.2008 rev.)
28

1    relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or even

2    "universally condemned,' " but must violate some due process right guaranteed by the fourteenth

3    amendment." Cupp v. Naughten, 414 U.S. 141, 146 (1973).  To prevail on such a claim

4    petitioner must demonstrate "that an erroneous instruction 'so infected the entire trial that the

5    resulting conviction violates due process.'" Prantil v. State of Cal., 843 F.2d 314, 317 (9th Cir.

6    1988) (quoting Darnell v. Swinney, 823 F.2d 299, 301 (9th Cir. 1987)).  See also Estelle, 502

7    U.S. at 72; Henderson v. Kibbe, 431 U.S. 145, 156-57 (1977); Hines v. Enomoto, 658 F.2d 667,

8    673 (9th Cir. 1981).  In making its determination, this court must evaluate the challenged jury

9    instructions "'in the context of the overall charge to the jury as a component of the entire trial

10    process.'" Prantil, 843 F.2d at 317 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir.

11    1984)).  Moreover, where the challenge is to a refusal or failure to give an instruction, the

12    petitioner's burden is "especially heavy," because "[a]n omission, or an incomplete instruction, is

13    less likely to be prejudicial than a misstatement of the law." Henderson, 431 U.S. at 155.  See

14    also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997).

15           Here, petitioner argues that his out of court statements, as related through the trial

16    testimony of three witnesses who each had previously been convicted of felonies, provided him

17    with a motive for the shooting.  (Pet. at 25-26.)  He argues that this, in turn, made it easier for the

18    jury to accept the prosecution's argument that it was he, rather than his co-defendant Magobet,

19    that was the shooter.  (Id.)  Under these circumstances, petitioner contends, the trial court was

20    required to *sua sponte* instruct his jury with CALCRIM 358.  (Id.)

21           Under California law, "[w]hen the evidence warrants, the court must instruct the jury *sua*

22    *sponte* to view evidence of a defendant's oral admissions or confession with caution," and the

23    trial court's failure to do so may constitute error. People v. Dickey, 35 Cal. 4th 884, 905 (2005);

24    People v. Stankewitz, 51 Cal. 3d 72, 93-94 (1990).  State law provides that a trial court's failure

25    to give such an instruction is to be reviewed to determine "whether it is more reasonably probable

26    the jury would have reached a result more favorable to defendant had the instruction been given."

27    Dickey, 35 Cal. 4th at 905.  In order to obtain federal habeas relief with respect to such a claim,

28    however, petitioner must also meet the heavy burden of demonstrating that the trial court's failure

13

1  to instruct the jury *sua sponte* with CALCRIM No. 358 so infected his trial that the resulting

2  conviction violates due process.  Estelle, 502 U.S. at 72.

3        The California Court of Appeal considered petitioner's argument that the trial court erred

4  in failing to *sua sponte* instruct the jury with CALCRIM No. 358 and rejected it, finding no

5  prejudicial error.  (Opinion at 14.).  With respect to petitioner's out of court statements introduced

6  into evidence at his trial through the testimony of petitioner's co-defendant Magobet, the state

7  appellate court reasoned as follows:

8              As to statements related by Magobet, we find neither error nor
             prejudice.  The jury was instructed that "Magobet was an
9              accomplice to" the crimes charged against defendant, and that
             "[a]ny testimony of an accomplice that tends to incriminate the
10             defendant should be viewed with caution.  You may not, however,
             arbitrarily disregard it.  You should give that testimony the weight
11             you think it deserves after examining it with care and caution and in
             light of all the other evidence."  (See CALCRIM No. 335 (new Jan.
12             2006) (Apr. 2010 rev.).)

13             It is well settled that the correctness of jury instructions is to be
             determined from the entire charge of the court; thus, the absence of
14             one instruction may be cured by matters included in another
             instruction.  (*People v. Burgener* (1986) 41 Cal. 3d 505, 538–539,
15             overruled on another point in *People v. Reyes* (1998) 19 Cal. 4th
             743, 753.) As to defendant's statements related through Magobet,
16             the jury was adequately instructed to view the evidence with
             caution.
17

18  (Opinion at 14-15).

19        Regarding petitioner's out of court statements introduced through the testimony of the

20  victim, Trevino, and the victim's girlfriend, Martinez, the state appellate court stated as follows:

21             Defendant's reliance on Trevino's testimony is misplaced.  When
             defendant objected that the testimony lacked foundation and was
22             speculative, the trial court allowed it in evidence for the sole
             purpose of *proving Trevino's state of mind*.  Nothing in the record
23             suggests that the jury used the testimony for the improper purpose
             of proving *defendant's intent* to shoot Trevino.  Thus, as to
24             Trevino's testimony, the omission of CALCRIM No. 358 could not
             have been prejudicial.  (*People v. Dickey* (2005) 35 Cal. 4th 884,
25             905 (*Dickey*); *People v. Watson* (1956) 46 Cal. 2d 818, 836
             (*Watson*).)
26
             Defendant also relies on Officer Steve Godden's testimony that
27             Trevino's girlfriend, Tiffany Martinez, had related that defendant
             had "told [Martinez] that [Trevino] was doing him wrong or doing
28             him bad and taking his money."   Later, when defendant and

1

2

> Magobet arrived at Martinez's residence prior to the shooting, defendant asked her where Trevino was.

> There was substantial conflict as to what defendant had told Martinez. (See *Dickey, supra*, 35 Cal. 4th at p. 905.) Martinez disavowed her statements to Officer Godden, stating that "some of the stuff [she] told" Godden during her interview with him "wasn't true." In her trial testimony, Martinez admitted that most of what she had told Officer Godden during the interview was not true because she had been under the influence of drugs that caused her to hallucinate. She felt that Godden had intimidated her.

> Defendant claims it is reasonably probable that the jury would have rejected Martinez's testimony regarding his statements had it been instructed to consider those statements with caution. But Martinez's recantation of her statements and her disavowal at trial similarly cast doubt upon the statements that she had attributed to defendant. It is not reasonably probable that CALCRIM No. 358 would have caused the jury to reject statements that it had credited notwithstanding Martinez's repeated disavowals. Thus, the omission of CALCRIM No. 358 could not have been prejudicial. ( *Dickey, supra*, 35 Cal. 4th at p. 905; *Watson, supra*, 46 Cal. 2d at p. 836.)

(Opinion at 15-17) (emphasis in original).

Even assuming, for the sake of argument, that the trial court erred by failing to instruct petitioner's jury *sua sponte* with CALCRIM No. 335, any such error was harmless. There is not a reasonable probability that petitioner would have received a more favorable result at trial had his jury been instructed to view testimony regarding his out of court statements with caution. As the California Supreme Court has stated,

> The purpose of the cautionary instruction is to assist the jury in determining if the statement was in fact made….[s]ince the cautionary instruction is intended to help the jury determine whether the statement attributed to the defendant was in fact made, courts examining the prejudice in failing to give the instruction examine the record to see if there was any conflict in the evidence about the exact words used, their meaning, or whether the admissions were repeated accurately.

Dickey, 35 Cal. 4th at 905 (citations omitted).

Petitioner argues that testimony regarding his out of court statements was directly related to the central issue at trial of his motive. (Pet. at 25.) He contends that consideration of the testimony regarding his statements made it easier for the jury to accept the prosecution's theory that he was the shooter. (Pet. at 25.) However, petitioner does not deny making the out of court

15

1   statements in question, nor does he point to any evidence calling into question the precise words

2   used, their meaning, or whether his out of court statements were repeated accurately by the trial

3   witnesses.  (Id. at 25.)  Instead, his argument amounts merely to challenging the credibility of the

4   trial witnesses based on their status as "convicted felons," "known methamphetamine users," and,

5   in Magobet's case, an "accomplice with a strong motive to lie." (Id.)

6         The jury at petitioner's trial was properly instructed regarding how to judge the credibility

7   of the witnesses who testified (CALCRIM 105); how to evaluate a witness's testimony, including

8   whether a witness was influenced by bias or prejudice, whether they had made prior inconsistent

9   statements, and whether they had suffered a felony conviction (CALCRIM 226); how to resolve

10  conflicts in the evidence (CALCRIM 302); how to evaluate eyewitness identification evidence

11  (CALCRIM 315); how to evaluate a witness's testimony concerning petitioner's statements made

12  before trial (CALCRIM 318); and to view the testimony of an accomplice with caution

13  (CALCRIM 335).  See 3 RT 772-779.  These instructions, taken as a whole, adequately informed

14  the jury that they were to view testimony of petitioner's purported out of court statements with

15  caution.[9]  See Cardenas v. Grounds, No. 2:12-cv-1333-JKS, 2014 WL 1338307, at *16 (E.D. Cal.

16  Apr. 2, 2014) (finding that the failure of the trial court to give CALCRIM No. 358 did not violate

17  the petitioner's due process rights in light of the other jury instructions given); Wheeler v. Martel,

18  No. 1:09-CV-1678 DLB HC, 2011 WL 1566021, at *6-8 (E.D. Cal. Apr. 25, 2011) (same)

19        Moreover, even disregarding petitioner's out of court statements which he claims were

20  relied upon to argue that he had a motive for the shooting; there was direct testimony at his trial

21  from Abel Trevino describing in detail the events that led to the shooting and the shooting itself,

22  as well as eyewitness testimony from Claudio Magobet corroborating the events as described by

23  Trevino.  (1 RT 261-269, 2 RT 549-550.)  This eyewitness testimony identified petitioner as the

24  shooter.  (Id.)  Under these circumstances, it is not reasonably probable that petitioner would have

25  received a more favorable result at trial had the court instructed the jury with CALCRIM 358.

26  _____

27  [9]   Absent evidence to the contrary, the court must presume that the jury followed these
    instructions.  See Weeks v. Angelone, 528 U.S. 225, 234 (2000); Richardson v. Marsh, 481 U.S.
    200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their

28  instructions").

1   For all of these reasons, the undersigned concludes that petitioner has failed to meet the

2   "heavy burden" of demonstrating the trial court's failure to instruct *sua sponte* with CALCRIM

3   358 "so infected the entire trial" that the resulting conviction violates due process.  Estelle, 502

4   U.S. at 72.  The state appellate court's decision finding no prejudicial error in this regard was not

5   contrary to clearly established federal law.  Petitioner is therefore not entitled to federal habeas

6   relief with respect to his claim that the trial court violated his right to due process by failing to

7   instruct his jury to view any testimony regarding his out of court statements with caution, in

8   accordance with CALCRIM No. 358.

9                                   **III. CONCLUSION**

10      Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

11  habeas corpus be denied.

12      These findings and recommendations are submitted to the United States District Judge

13  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

14  after being served with these findings and recommendations, any party may file written

15  objections with the court and serve a copy on all parties.  Such a document should be captioned

16  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

17  shall be served and filed within fourteen days after service of the objections.  Failure to file

18  objections within the specified time may waive the right to appeal the District Court's order.

19  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

20  1991).  In his objections petitioner may address whether a certificate of appealability should issue

21  in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing

22  Section 2254 Cases in the United States District Courts (the district court must issue or deny a

23  certificate of appealability when it enters a final order adverse to the applicant).

24  Dated:  April 23, 2014

25

26  DDad1.habeas:AAK
    Ornelas12cv3097.hc2.docx

27

28

                                   DALE A. DROZD
                                   UNITED STATES MAGISTRATE JUDGE